THE S. C. FORSAITH MACHINE COMPANY v. CHARLES C. MENGEL ET AL.

*Sale—Warranty—Option to return property—Acceptance.*

This case falls within the principle applied in *Childs v. O'Donnell*, 84 Mich. 533, that an option given to a buyer to return goods if not satisfactory must be exercised within a reasonable time after the receipt of the goods, and their retention after the expiration of such reasonable time must be regarded as an acceptance, unless the option is extended in clear and unmistakable language.

Error to Bay. (Cobb, J.) Argued January 2, 1894. Decided March 20, 1894.

*Assumpsit.* Defendant Charles C. Mengel brings error. Affirmed. The facts are stated in the opinion.

*Simonson, Gillett & Courtright,* for appellant.

*Pratt, Van Kleeck & Gilbert,* for plaintiff.

MONTGOMERY, J. This is an action to recover the price of a match machine furnished by plaintiff to defendants. On May 24, 1884, defendants wrote plaintiff, stating that they were desirous of purchasing such a machine. Plaint-

iff replied that it was not manufacturing such machines, and referred defendants to the White Machine Company, Waterbury, Conn. Defendants replied as follows:

"We think you can ·buy ·cheaper than we could, and we are willing you should make the difference. So please get the drafts or pictures, and price, capacity, etc., and send it on to us, both for square and round matches."

Plaintiff, after some little delay, wrote defendants, on June 11:

"We will put the new match machinery down to the very bottom cash price, and we. trust that the machines we offer will please you. We guarantee that the workmanship and material are all first-class, with modern improvements. * * * A full set is one splint machine, six rolling up and three rolling off; capacity of the splint machine, 225 to 250 gross per day."

On September 29 defendants wrote plaintiff:

"We do not wish to make matches,—only the splints. Send us a drawing by hand of your square-match machine you offered us June 11, $300,—250 gross per day."

On October 15 this letter was replied to, and on October 21 defendants wrote as follows:

"Yours received. In reply, would say that you may send us a square-splint machine, as described in your letter of June 11. We will start shortly, and we will pay as soon as we find the machine works as represented, and makes nice splints. If this machine is O. K., we will need more," etc.

October 31 plaintiff replied:

"Your esteemed order for the square-splint machine entered, and the same shall receive our prompt attention. We know the machine will give every satisfaction,—of the latest pattern, and the workmanship strictly first-class; · and we trust that we shall have the pleasure of supplying you with a number of these machines."

On December 6 the machine was shipped; December 24 instructions for setting up the machine were sent; and

January 7 plaintiff drew on defendants for the purchase price. January 10 defendants wrote, saying:

" We had no way of testing your machine by power, and, as we do not start up again before February 1, we have no way of testing it. Not knowing the size of the pulley, we had to send for one after we had a chance to measure same on your machine. We hope it will work well by power, but do not think it will come up to your figures,—225 gross per day."

Numerous letters were written back and forth between the parties, when, on February 28, 1885, defendants wrote to plaintiff as follows:

" Will telegraph you, night dispatch, ' Get machine running without breaking it.' We dare not.' The fact is, the ends of the blocks drop out, and get in somewhere, so something must give way sometimes. Our man will not run it. He says it will break, sure, as it is. The union starts in $\frac{1}{8}$ of an inch this side of the end of block 2 inches thick; a $2\frac{1}{4}$ block it would start in $\frac{1}{2}$ to the left. Emery & Garland's head man says he can fix it, but we will not do so unless you advise us to do so."

On March 11 defendants wrote plaintiff:

" If you do not telegraph us at once what to do with that match machine, we will put it out, subject to your orders. As it is, nobody can work it without breaking it."

On the 12th of March, plaintiff wrote defendants:

" So long as you say that the foreman of Messrs. Emery & Garland can put the machine in proper shape to work, we would like to have you make the change, and anything reasonable we will, of course, pay, if the fault is ours, or in the construction of the machine; but, as we have frequently written you, we must insist upon this having attention, as we feel anything but satisfactory at the manner in which it has dragged along. We ask you, therefore, to give the matter your instant attention, and we trust that you will further explain more in detail as to the fault you have to find in the machine."

Again, on the 13th, in response to a telegram from defendants, plaintiff wrote:

"We think our letter of the 12th covered all the points, as we suggested to you that if there is any fault in the machine, or its construction, we are perfectly willing for you to have the gentleman make the changes there, as he and you suggest, and we trust that you will give this your immediate attention."

On the 18th plaintiff again wrote defendants:

"We have today received word from the manufacturers of the machine forwarded you, and they say to have the change made which you suggest, and to send in itemized bill of the outlay, and they will allow same,—anything within the bounds of reason,—rather than to be subjected to further annoyance in correspondence."

On April 3 plaintiff wrote defendants, asking settlement. On April 13 defendants wrote:

"The writer just returned from the factory. The splint machine broke the third time, and I had an iron $\frac{1}{2}$ inch thick strap put over the upright hanger fastened to the frame, and put 2 $\frac{3}{4}$ set screws on the top, so as to keep it firm. I hope it will stay put. There is something wrong about it."

Defendants inclosed a drawing showing where the cast-iron three-inch stay broke off. On the 29th of April defendants wrote the following letter:

"Mr. W. E. Drew, Agent,
   "Manchester, N. H.
"*Dear Sir:* Mr. Catlin has made your match machine so it will not break any more, and claims the improvement on patent of it, as, without it, it is no good whatsoever."

May 27 plaintiff wrote defendants as follows:

"We would like you to arrive at some positive decision at once, as we understand that you are using the machine, and therefore detracting from its selling value; and you cannot expect us to take it back after you have run indefinitely, and made a second-hand machine of it. Please understand that we give you due notice on this score. While, of course, we want an amicable settlement with you, we must insist upon a settlement of this dispute, in some shape, at once, as it is only growing unpleasant for all concerned."

Defendants, on June 2, replied to this letter as follows:

"The writer has just returned from the east, and notes your letters. We telegraphed the White Machine Company to express us a five-inch feed box so we can work your machine. The breaking had taken our attention off this feed part,"—stating further: "The fact is, we ought to claim for damages for all the trouble and loss sustained, as we could have sold all the splints if we had run three machines."

On June 6 plaintiff replied to this letter, stating:

"You do not seem willing to discuss the main point, which is whether it is paying you to retain the machine there longer or not. We have acted with you in perfect good faith, giving you simply word for word as given us by the builders, and only sent the machine after we had advised you to order direct of them. Therefore, we feel that the circumstances are such that you should pay for, or return, the machine. We doubt not that you want this machine, or one similar to it, to do your service; but it has been many a long time, and without, as we can see, any nearer approach to a settlement now than when it was first forwarded. If, however, you think the feed box which you have telegraphed for will enable you to be satisfied with the machine, and make settlement, you can so retain; but we would notify you that we hold you responsible for the machine in case of fire, or any similar disaster."

The machine was not returned. On the 6th of August plaintiff wrote defendants, again asking settlement. On the 11th of August it again wrote, saying:

"We must insist upon your giving us an answer as to whether you propose to retain the machine there or not, as, if you do, we want our pay, and, if you do not intend to make payment, we want the machine returned."

August 14 defendants replied:

"In reply to your letters, 6 and 11 inst., we would say that we do not owe you one cent yet. * * * We have the machine now so it works without breaking, and shall see what she will do as soon as we start up the engine,— in, say, about a month. This machine has been a perfect

nuisance to us, and has taken a good deal of our time and labor, which we have to charge up to your inclosed machine bill, $53.78."

On August 18 plaintiff replied to this, calling attention to the fact that, by the bill which defendants inclosed, it would appear that nothing had been done upon the machine since April 21, and further saying:

"We will say now that if you want to keep the machine, sending us check for the difference between your claim of $53.78 and our bill for the machine, you may do so; but we do not want this to run along indefinitely, with possibly other charges to be made against same, although we are frank enough to say to you that we see no justice in such a charge being made. You will please answer us by return mail whether you have run the machine any since April 21 to date, or, if you have run, how much of the time."

On August 28 defendants wrote plaintiff as follows:

"In reply to your letter, we would say that it is for us to get justice done by you. We have been the losers. We have 100,000 feet blocks on hand, and could have sold the splints if your machine had been what you represented it to us,—cutting 225 and 250 gross per day,—when, up to this day, all we cut would go into a dry-goods box. Of course, the strikers interfered after the broken parts replaced reached us, shipped June 16. We ought to have sent it back at once. We made this machine work, and claim the improvements; so you will hasten to send the number of patent, as we will need to have it in order to get patent. This has been so disagreeable business that we always dislike to reply to your letters," etc.

Plaintiff frequently asked settlement, again receiving no reply, until, December 16, defendants wrote plaintiff, saying:

"We have put that White splint machine into the F. & P. M. warehouse, as it proved a failure, and does not do the work you said it would."

The defendants offered testimony upon the trial tending to show that the machine was of little or no value.

Upon these facts the court directed a verdict for the

plaintiff for the purchase price of the machine, less the expense incurred in repairing it.

We think this direction was entirely justified by the facts in the case. The defendants themselves fixed the terms upon which payment was to be made, in the letter of October 21:

"We will start shortly, and we will pay as soon as we find the machine works as represented, and makes nice splints."

They subsequently undertook to repair the machine, and did so at considerable expense to the plaintiff. The plaintiff persistently asked a settlement or a return of the machine. From August 14, when they had the machine so it would work without breaking, as they said, until December 16, plaintiff was persistently asking for settlement. Four months after the defendants were in position to test the machine, and nearly one year after shipment, the defendants, for the first time, proposed to return the machine. This delay was very clearly unreasonable. The whole course of dealings of defendants exhibits an extreme indifference to business engagements.

It is suggested that when the machine was received they had an option to receive the machine and recoup damages, or to refuse to accept it. But we do not so construe the contract. The defendants were not content to accept the machine until it should prove satisfactory, as is evidenced by their letter of October 21, 1884; and the whole course of correspondence shows that the question with them was whether they should accept or reject the machine. The plaintiff's letters show that it also understood the machine was not to be accepted until the defendants satisfied themselves that it would do the work it was recommended to do. If there was any ambiguity in the contract first made, the subsequent correspondence makes it clear that the expenditure of money was authorized by plaintiff on

the understanding that defendants were to exercise the option of accepting or rejecting the machine, and that promptly. The case falls within the principle applied in *Childs v. O'Donnell*, 84 Mich. 533.

The judgment will be affirmed, with costs.

The other Justices concurred.